# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUSTIN DUFOE, on Behalf of Himself and All Others Similarly Situated, | |
| Plaintiff, | Case No. 23-cv-10524-DJC |
| v. | <u>CLASS ACTION</u> |
| DRAFTKINGS INC., JASON D. ROBINS, JASON K. PARK, and MATTHEW KALISH, | Honorable Judge Denise J. Casper |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................ 1

II.    RELEVANT BACKGROUND ..................................................................... 2

III.   THE PROPOSED SETTLEMENT.............................................................. 4

    A.    Class Definition ............................................................................. 4

    B.    Class Relief .................................................................................... 4

        1.    Settlement Fund .................................................................. 4

        2.    Distribution of Settlement Funds to Class Members .................. 4

        3.    Payment of Class Representative Service Award ...................... 5

        4.    Payment of Attorneys' Fees and Costs........................................ 5

    C.    Settlement Administration ............................................................. 5

    D.    Dissemination of Notice to the Class............................................ 6

    E.    Opportunity to Object or Opt Out................................................. 7

    F.    The Court Retains Jurisdiction...................................................... 8

IV.   PROPOSED SCHEDULE ........................................................................... 8

V.    ARGUMENT .............................................................................................. 8

    A.    The Court Should Certify the Class for Purposes of Settlement ........... 8

        1.    The Settlement Class Satisfies Rule 23(a)............................... 9

            a.    The Class is Sufficiently Numerous ......................... 9

            b.    Questions of Law or Fact are Common to the Class ................... 10

            c.    Lead Plaintiff's Claims are Typical.............................. 11

            d.    Lead Plaintiff will Fairly and Adequately Protect the Class......... 12

        2.    The Settlement Class Satisfies Rule 23(b)(3) ......................... 13

            a.    Common Questions Predominate ............................... 13

            b.      The Class is the Superior Method of Adjudication ...................... 14

B.     The Settlement, Notice Plan, and Plan of Allocation Warrant Preliminary Approval ................................................................................................... 15

      1.    The Settlement Should Be Preliminarily Approved.................................. 15

      2.    The Notice Plan Should Be Preliminarily Approved ............................... 19

      3.    The Plan of Allocation Should Be Preliminarily Approved..................... 20

VI.   CONCLUSION.......................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................ 9

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013) .............................................................................................. 13

*Andrews v. Bechtel Power Corp.*,
  780 F.2d 124 (1st Cir. 1985) ........................................................................... 12, 13

*Audet v. Fraser*,
  332 F.R.D. 53 (D. Conn. 2019) ............................................................................. 9

*In re AVEO Pharms., Inc. Sec. Litig.*,
  No. 13 Civ. 11157, 2017 WL 5484672 (D. Mass. Nov. 14, 2017) ................... 12, 14

*Balestra v. ATBCOIN LLC*,
  No. 17 Civ. 10001, 2022 WL 950953 (S.D.N.Y. Mar. 29, 2022) ........................... 9

*Balestra v. Cloud With Me Ltd.*,
  No. 18 Civ. 0804, 2020 WL 4370392 (W.D. Penn. July 2, 2020) ..................... 12, 15

*Bezdek v. Vibram USA Inc.*,
  79 F. Supp. 3d 324 (D. Mass. 2015) ...................................................................... 9

*In re Bos. Sci. Corp. Sec. Litig.*,
  604 F. Supp. 2d 275 (D. Mass. 2009) .................................................................. 14

*Bussie v. Allmerica Fin. Corp.*,
  50 F. Supp. 2d 59 (D. Mass. 1999) ...................................................................... 19

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
  100 F.3d 1041 (1st Cir. 1996) .............................................................................. 16

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
  216 F.R.D. 197 (D. Me. 2003) ............................................................................. 16

*Dahhan v. OvaScience, Inc.*,
  No. 17 Civ. 10511, 2020 WL 2602138 (D. Mass. May 8, 2020) ........................... 13

*Davy v. Paragon Coin, Inc.*,
  No. 18 Civ. 0671, 2020 WL 4460446 (N.D. Cal. June 24, 2020) ..................... 11, 15

*Dietrich v. Bauer*,
    192 F.R.D. 119 (S.D.N.Y. 2000) ................................................................... 9

*Downes v. Rivera*,
    No. 15 Civ. 0705, 2015 WL 9022001 (10th Cir. Dec. 8, 2015) ................................ 14

*Dublin v. The E.F. Hutton Grp. Inc.*,
    No. 88 Civ. 0876, 1990 WL 105757 (S.D.N.Y. July 20, 1990) ................................ 9

*Durrett v. Hous. Auth. of City of Providence*,
    896 F.2d 600 (1st Cir. 1990) .......................................................... 8, 15

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ................................................................... 19

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
    275 F.R.D. 382 (D. Mass. 2011) ..................................................... 13, 15

*Garcia-Rubiera v. Calderon*,
    570 F.3d 443 (1st Cir. 2009) .......................................................... 10

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ................................................................... 10

*Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*,
    285 F.R.D. 169 (D. Mass 2012) ........................................................ 11

*Greenspun v. Bogan*,
    492 F.2d 375 (1st Cir. 1974) .......................................................... 20

*Hill v. State St. Corp.*,
    No. 9 Civ. 12146, 2015 WL 127728 (D. Mass. Jan. 8, 2015) ................................ 20

*Hochstadt v. Bos. Sci. Corp.*,
    708 F. Supp. 2d 95 (D. Mass. 2010) ....................................... 10, 16, 18, 19

*Hotel Holiday Inn de Isla Verde v. N.L.R.B.*,
    723 F.2d 169 (1st Cir. 1983) .......................................................... 16

*In re Laser Arms Corp. Sec. Litig.*,
    794 F. Supp. 475 (S.D.N.Y. 1989) ..................................................... 9

*In re Lupron Mktg. & Sales Pracs. Litig.*,
    345 F. Supp. 2d 135 (D. Mass. 2004) .................................................. 18

*In re Lupron Mktg. & Sales Practices Litig.*,
    228 F.R.D. 75 (D. Mass. 2005) ........................................................ 16

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
  270 F.R.D. 45 (D. Mass. 2010) ................................................................. 17

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ................................................................................. 19

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.*,
  318 F.R.D. 435 (D. Colo. 2015) ............................................................... 14

*Ouadani v. Dynamex Operations E., LLC*,
  405 F. Supp. 3d 149 (D. Mass. 2019) ...................................................... 10

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  588 F.3d 24 (1st Cir. 2009) ...................................................................... 16

*In re Relafen Antitrust Litig.*,
  231 F.R.D. 52 (D. Mass. 2005) .............................................. 15, 16, 17, 18

*Rensel v. Centra Tech, Inc.*,
  No. 17 Civ. 24500, 2021 WL 4134984 (S.D. Fla. Sept. 10, 2021) ............... 10, 13, 15

*Rolland v. Cellucci*,
  191 F.R.D. 3 (D. Mass. 2000) ................................................. 16, 17, 19

*S. States Police Benevolent Ass'n, Inc. v. First Choice Amor & Equip., Inc.*,
  241 F.R.D. 85 (D. Mass. 2007) ................................................................ 10

*Schlusselberg v. Colonial Mgmt. Assoc., Inc.*,
  389 F. Supp. 733 (D. Mass. 1974) ........................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................ 10, 11

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
  208 F.3d 288 (1st Cir. 2000) ........................................................... 9, 11, 14

*Williams v. KuCoin*,
  No. 20 Civ. 2806, 2021 WL 5316013 (S.D.N.Y. Oct. 21, 2021) ............... 11, 12, 15

*Zakinov v. Ripple Labs, Inc.*,
  No. 18 Civ. 6753, 2023 WL 4303644 (N.D. Cal. June 30, 2023) ............... 14, 15

**Statutes**

15 U.S.C. § 77l ........................................................................................... 14

28 U.S.C. § 1715 .......................................................................................... 7

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................... 9

Fed. R. Civ. P. 23(a)(1) ...................................................................................................... 9

Fed. R. Civ. P. 23(a)(2) .................................................................................................... 10

Fed. R. Civ. P. 23(a)(3) .................................................................................................... 11

Fed. R. Civ. P. 23(a)(4) .................................................................................................... 12

Fed. R. Civ. P. 23(b)(3) .................................................................................................... 13

Fed. R. Civ. P. 23(c)(2) .................................................................................................... 19

Fed. R. Civ. P. 23(e)(2) .................................................................................................... 15

Lead Plaintiff,[1] Justin Dufoe, individually and on behalf of the putative class, submits this Memorandum of Law in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion").

## I.    INTRODUCTION

After a year and a half of vigorous litigation, the Parties have negotiated, at arm's length, a proposed Settlement of all claims in the above captioned litigation (the "Action") for $10 million in cash. This outstanding result was reached only after a thorough investigation of the claims, fully briefing Defendants' motion to dismiss, discovery in advance of the mediation, an all-day mediation, which involved rigorous and extensive negotiations before a neutral third party, and continued confirmatory discovery and information sharing.

In light of the favorable relief the Settlement provides, as well as the inherent risks and inevitable delays of continued litigation, Lead Plaintiff and Class Counsel submit that the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class, and should be preliminarily approved. Resolving the Action at this juncture allows the Parties to avoid continued and costly litigation that would deplete resources. This is especially true considering the very real risk that the Class might recover substantially less (or nothing) if the Action were litigated through expert discovery, class certification, summary judgment, trial, and the likely post-trial motions and appeals that would follow; a process that could last several years.

All prerequisites for preliminary approval of the Settlement and certification of the Settlement Class are satisfied and Lead Plaintiff respectfully submits that the Motion should be granted, and Notice should be provided to the Settlement Class.

---

[1] Unless otherwise indicated, defined terms shall have the definitions set forth in the Stipulation of Settlement ("Settlement" or "Settlement Agreement"). The Settlement Agreement and its exhibits are attached as Exhibit 1 to the Declaration of Sarah E. Flohr in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Settlement ("Flohr Decl."). Citations to the Settlement Agreement are abbreviated as "§ ___."

## II.    RELEVANT BACKGROUND

Defendant DraftKings is a publicly traded digital sports entertainment and gaming company. ¶ 10.[2] The individual defendants are Officers of DraftKings. ¶¶ 11-13. DraftKings owns, controls, and operates the DK Marketplace, an online platform where investors can buy and sell DraftKings NFTs. ¶ 10. An NFT is a digital asset whose ownership and history of transactions is reflected in the blockchain. ¶¶ 18-19. Through initial offerings, DraftKings sold its NFTs directly to investors through its exchange, the DK Marketplace. ¶ 52. DraftKings received all revenue from the initial offerings. ¶ 53. Also, secondary market transactions between investors also occurred on the DK Marketplace. ¶ 52. DraftKings received at least a 5% commission on all secondary sales. ¶ 53. DraftKings required its NFTs to be stored in a DraftKings wallet and traded only on the DK Marketplace, which had the look and feel of a stock market. ¶¶ 70, 130-31, 135. DraftKings NFT investors could also use "gamified NFTs" to earn cash prizes, which were promotional efforts to generate investor interest in DraftKings' NFTs. ¶¶ 54, 104. To participate, investors had to own multiple qualifying gamified NFTs. ¶¶ 54-55. As a result, most investors did not qualify. ¶ 56.

On March 9, 2023, the initial complaint was filed. ECF No. 1. On June 6, 2023, the Court appointed Justin Dufoe as Lead Plaintiff, Kirby McInerney LLP as Lead Counsel, and Berman Tabacco as Local Counsel. ECF No. 31. On August 4, 2023, Lead Plaintiff filed the operative Complaint on behalf of himself and a class of investors who purchased DraftKings' NFTs from August 11, 2021 through the present. ¶ 1. The Complaint alleges that DraftKings sold its NFTs as unregistered securities and operated its DK Marketplace as an unregistered securities exchange in violation of federal and Massachusetts securities laws. *Id.* On September 25, 2023, Defendants

---

[2] Unless otherwise noted: (i) citations to "¶ __" are to the Amended Complaint filed August 4, 2023 (the "Complaint") (ECF No. 38); and (ii) citations to "MTD Opinion" are to the Court's Memorandum and Order denying Defendants' Motion to Dismiss, dated July 2, 2024 (ECF No. 60).

moved to dismiss the Complaint (ECF No. 46), which Lead Plaintiff opposed (ECF No. 55). After hearing oral argument on December 19, 2023, the Court issued its opinion on July 2, 2024, denying Defendants' motion to dismiss in its entirety, sustaining all of Lead Plaintiff's claims. ECF No. 60. On August 15, 2024, Defendants filed their Answer to the Complaint (ECF No. 74).

After the Defendants' motion to dismiss was denied, and the day after the Court held an initial case management conference to discuss the possibility of settlement and set deadlines relating to discovery and class certification, Defendants shut down its NFT marketplace, making the NFTs worthless. ECF No. 72; ¶¶ 37, 87, 101, 142. Through a community announcement posted on its website, which has since been removed, DraftKings announced it "decided to discontinue Reignmakers and our NFT Marketplace, effective immediately, *due to recent legal developments*." Flohr Decl. ¶ 4 (emphasis added). When it shut down the DK Marketplace, DraftKings offered certain NFT investors a fraction of what they had invested in the NFTs. *Id*. ¶ 5.

Following the closure of the DK Marketplace, the Parties engaged in voluntary settlement discussions. *Id*. ¶ 7. After weeks of arm's-length negotiations between competent and experienced counsel, including the exchange of informal discovery for settlement purposes only, the Parties participated in a full-day mediation session before Jed D. Melnick, Esq. and Orna Artal, Esq. of JAMS, which resulted in a mediator's proposal for a settlement. *Id*. ¶¶ 8-9. Both parties accepted the mediator's proposal, subject to executing formal settlement documents and the Court's approval. *Id*. The Parties' negotiated settlement terms, which are memorialized in the Settlement Agreement and provide for the resolution of all claims and causes of actions asserted.

Lead Plaintiff and Class Counsel believe, in consideration of all circumstances and after serious arm's-length settlement negotiations with DraftKings, that the proposed Settlement is fair, reasonable, and adequate and is in the best interests of the Settlement Class Members.

## III.    THE PROPOSED SETTLEMENT

### A.    Class Definition

The Settlement Class is defined as follows:

All persons or entities who purchased, acquired, sold, disposed of, owned, held, used, or otherwise transacted in NFTs in a DraftKings account during the Class Period, including, without limitation, Marketplace NFTs.

The Class Period is August 11, 2021 through and inclusive of the date of entry of the Judgment. Excluded from the Class are: (i) Defendants; (ii) DraftKings' officers and directors during the Class Period; (iii) the Immediate Family of Defendants and their legal representatives, heirs, successors, or assigns; and (iv) any entity in which Defendants have or had a controlling interest. Also excluded are those persons who are found by the Court to have timely and validly submitted a request for exclusion from the Settlement Class that is accepted by the Court.

### B.    Class Relief

#### 1.    Settlement Fund

The Settlement creates a $10 million fund in exchange for release of claims contained in Section IV of the Settlement Agreement. The $10 million fund will be used to pay the following: (1) compensation to each participating Class Member; (2) attorneys' fees, reimbursement of Litigation Expenses, and payment of a Service Award for Lead Plaintiff, subject to Court approval; and (3) all costs necessary to provide notice to the Settlement Class and administer the Settlement. § 2(b)(i). If unclaimed funds remain, a second distribution will be made to Authorized Claimants. § 28. The Settlement prohibits reversion of unclaimed funds to Defendants. *Id*.

#### 2.    Distribution of Settlement Funds to Class Members

The amount paid to each Settlement Class Member will be based on the proposed Plan of Allocation set forth in the Long-Form Notice. Stipulation Ex. A-2. The proposed Plan of Allocation was drafted based upon information and discovery and with the assistance of Peregrine Economics,

a firm whose principal has over 26 years of experience as a consultant and expert on hundreds of matters. Flohr Decl. ¶ 13. No Settlement Class Member will receive preferential treatment; indeed, all such individuals will be eligible to recover an amount calculated on the same basis.

3.  Payment of Class Representative Service Award

Lead Plaintiff anticipates asking the Court to approve a service award of up to $50,000 to be paid out of the Settlement Fund to compensate Lead Plaintiff for his time and effort litigating the case for the benefit of the Settlement Class. § 1(nn) & Ex. B ¶ 9. Lead Plaintiff has actively participated in the litigation since the very beginning, assisting with the drafting of the initial complaint filed in March 2023. Throughout the litigation Lead Plaintiff has assisted Class Counsel in investigating the claims at issue and drafting the respective complaints and documents. Flohr Decl. ¶ 11. Lead Plaintiff consulted with Class Counsel and produced DraftKings materials received throughout the Action, including communications he received when the DK Marketplace was shut down. *Id*. Lead Plaintiff was also the subject of communications on public forums concerning NFTs. *Id*. Consistent with awards regularly granted under similar circumstances, Lead Plaintiff should be compensated for his effort supporting the litigation and assisting Class Counsel in achieving a strong settlement on behalf of the Class.

4.  Payment of Attorneys' Fees and Costs

At Final Approval, Class Counsel anticipates seeking an award of attorneys' fees of up to one-third of the Settlement's common fund, plus reimbursement of all reasonable and necessary Litigation Expenses advanced by Class Counsel. § 33 & Ex. B ¶ 10. Class Counsel prosecuted this Action on a contingent basis and advanced all associated costs with no expectation of recovery in the event the litigation did not result in recovery for the Settlement Class. Flohr Decl. ¶ 10.

**C.    Settlement Administration**

The proposed Settlement Administrator, whom Class Counsel selected and the Parties have

contractually agreed upon, is A.B. Data, Ltd. ("A.B. Data"). Flohr Decl. ¶ 14. A.B. Data has over 40 years of experience administering class action settlements and has administered hundreds of complex class action settlements. *Id*. & Ex. 2 at 1, 8-15. A.B. Data has robust procedures for handling class member data and sufficient insurance coverage. Flohr Decl. ¶ 14 & Ex. 2 at 2-4. Class Counsel is confident that A.B. Data will perform its work in an efficient, secure, and cost-effective manner, while attempting to ensure a high claims rate among the Class. Flohr Decl. ¶ 14.

Notice and administration costs will be capped at $300,000, which is approximately 3% of the Settlement Fund and will be paid from the Settlement Fund. *Id*., § 2(b)(i). Should costs exceed this cap, Class Counsel will apply to the Court for additional cost payments. *Id*. A.B. Data shall administer the Settlement subject to the supervision of Class Counsel and the Court as circumstances may require. § 19. A.B. Data will provide notice to the Settlement Class, maintain the Settlement Website and a toll-free telephone number for Settlement Class Members to call with questions, and process claims submitted by Settlement Class Members. *Id*. The primary responsibilities of the Settlement Administrator are set forth in the Settlement Agreement. *Id*.

### D.    Dissemination of Notice to the Class

Within fourteen (14) business days of the date of entry of the Preliminary Approval Order, DraftKings shall use reasonable efforts to provide or cause to be provided to Class Counsel and the Settlement Administrator, to the extent known or reasonably knowable or otherwise readily identifiable, the Settlement Class Information, defined in the Settlement Agreement. § 20.

Beginning not later than fifteen (15) business days after the entry of the Preliminary Approval Order (the "Notice Date"), the Settlement Administrator shall cause a copy of the Email Notice, substantially in the form attached to the Settlement Agreement, to be emailed to all potential Settlement Class Members who may be identified through reasonable effort. Ex. A ¶ 10(a) & Ex. A-1. The Long-Form Notice will be mailed by first-class mail if requested or if Email Notice

is undeliverable. Ex. A ¶ 10(a) & Ex. A-2. By the Notice Date, the Settlement Administrator shall: (1) cause copies of the Long-Form Notice and Claim Form to be posted on the Settlement Website; and (2) maintain a toll-free number, which Settlement Class Members can call with questions about the Settlement. Ex. A ¶ 10(b) & Exs. A-2, A-3. The Long-Form Notice shall include Class Counsel and the Settlement Administrator's contact information, and the address of the Settlement Website, which will include a list of key deadlines and copy of key documents, including but not limited to the Preliminary Approval Order, the motions for preliminary and final approval and application for attorneys' fees, costs, and service awards, and the Complaint. Ex. A-2.

Within ten (10) business days after the Notice Date, the Settlement Administrator shall cause the Publication Notice to be transmitted over the PR Newswire. Ex. A ¶ 10(c); Ex. A-4. The Publication Notice shall inform Settlement Class Members of the fact of the Settlement and that information is available on the Settlement Website. *Id*.

Upon Lead Plaintiff's filing of the motion requesting issuance of the Preliminary Approval Order, *i.e.*, this Motion, DraftKings will provide timely notice of such motion to the appropriate officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. § 21.

### E.    Opportunity to Object or Opt Out

Members of the Settlement Class shall be permitted to object to the Settlement and/or Lead Plaintiff's forthcoming applications for a Fee and Expense Award and a Service Award, or to opt out of the Settlement. The Long-Form and Publication Notices will advise Settlement Class Members of these options and provide the deadlines for doing so. § 19 & Exs. A-2, A-4. Settlement Class Members shall file written objections with the Court and serve copies of such objections on Class Counsel and Defendants' Counsel so that they are received no later than twenty-one (21) calendar days prior to the Settlement Hearing. Ex. A ¶ 18.

### F.     The Court Retains Jurisdiction

The Parties and each member of the Settlement Class will submit to the exclusive and continuing jurisdiction of the Court for any dispute related to the Settlement. Ex. A ¶ 32.

## IV.     PROPOSED SCHEDULE

Lead Plaintiff proposes the following schedule:

| Event | Reference to Preliminary Approval Order (Ex. A) | Timing |
|---|---|---|
| DraftKings to provide Claims Administrator with Settlement Class Member Information | ¶ 11 | Not later than 14 business days after entry of this Order |
| Notice Date | ¶ 10(a) | Not later than 15 business days after entry of this Order |
| Claims Deadline | ¶ 15 | 120 calendar days after the Notice Date |
| Opt-Out Deadline | ¶ 18 | 21 calendar days prior to Final Approval Hearing |
| Objection Deadline | ¶ 22 | 21 calendar days prior to Final Approval Hearing |
| Motion for Final Approval and Motion for Fee and Expense Award and Incentive Award | ¶ 26 | 35 calendar days prior to Final Approval Hearing |
| Reply Papers in Support of Motion for Final Approval and Motion for Fee and Expense Award and Incentive Award | ¶ 26 | 7 calendar days prior to Final Approval Hearing |
| Final Approval Hearing | ¶ 7 | No earlier than 120 calendar days after the Notice Date, as set by the Court |

## V.     ARGUMENT

### A.     The Court Should Certify the Class for Purposes of Settlement

When the Court is presented with a proposed settlement, it must determine whether the proposed settlement class satisfies the Federal Rule of Civil Procedure 23 requirements for class certification. *Durrett v. Hous. Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990). A proposed class must meet the four requirements of Rule 23(a) and at least one subsection of Rule

23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997); Fed. R. Civ. P. 23.

When "considering certification for settlement as opposed to trial [the court] need not assess 'whether the case, if tried, would present intractable management problems.'" *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 337 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015) (quoting *Amchem*, 521 U.S. at 620). In settlement-only class certifications, the court conducts its inquiry with heightened scrutiny "to protect absentees by blocking unwarranted or overbroad class definitions." *Bezdek*, 79 F. Supp. 3d at 337 (quoting *Amchem*, 521 U.S. at 620 & n.16).

Securities cases are "particularly well-suited for class treatment." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000). This is true of cases, like this, alleging the sale of unregistered securities. *See Dietrich v. Bauer*, 192 F.R.D. 119 (S.D.N.Y. 2000) (certifying claims stemming from allegations of unregistered securities under § 12 of the Securities Act); *see also Dublin v. The E.F. Hutton Grp. Inc.*, No. 88 Civ. 0876, 1990 WL 105757, at *7 (S.D.N.Y. July 20, 1990) (certifying claims brought under § 5 of the Securities Act for sale of unregistered securities); *In re Laser Arms Corp. Sec. Litig.*, 794 F. Supp. 475 (S.D.N.Y. 1989) (certifying class with claims including sale of unregistered securities). This guidance has been applied in cases concerning unregistered digital assets, such as NFTs. *See Audet v. Fraser*, 332 F.R.D. 53 (D. Conn. 2019) (certifying class of cryptocurrency purchases asserting claims under 10(b) of the Exchange Act); *see also Balestra v. ATBCOIN LLC*, No. 17 Civ. 10001, 2022 WL 950953 (S.D.N.Y. Mar. 29, 2022) (certifying ICO purchase class for settlement purposes). Plaintiff is confident that class certification will be granted if this litigation proceeds.

      1.    <u>The Settlement Class Satisfies Rule 23(a)</u>

        a.    *The Class is Sufficiently Numerous*

The numerosity requirement of Rule 23 requires that a putative class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is a "'low

threshold' that typically can be satisfied with a showing that the class is comprised of at least 40 members." *Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149, 160 (D. Mass. 2019) (citing *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009)).

It is typical in digital asset cases that numerosity is found based on estimated class sizes or data available to the parties. *Rensel v. Centra Tech, Inc.*, No. 17 Civ. 24500, 2021 WL 4134984, at *6 (S.D. Fla. Sept. 10, 2021) (finding sufficient numerosity based on spreadsheet produced to SEC identifying investors but also noting that the defendant "maintained business records of information submitted by investors that purchased . . . [t]okens during" an initial coin offering). Here, Class Counsel estimates there are over 175,000 Settlement Class Members, based on discovery produced in advance of the mediation in this case. Flohr Decl. ¶ 6. Thus, the proposed Class easily meets Rule 23(a)'s numerosity requirements.

> ### b.    *Questions of Law or Fact are Common to the Class*

The commonality prerequisite requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).[3] Commonality involves "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original). This occurs when there is at least one common question, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*; *see also Garcia-Rubiera*, 570 F.3d at 460 (same). Commonality is a low hurdle. Class members need not present factual or legal situations that are "virtually identical." *S. States Police Benevolent Ass'n, Inc. v. First Choice Amor & Equip., Inc.*, 241 F.R.D. 85, 87-88 (D. Mass. 2007); *see also Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95,

---

[3] "The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting that these requirements often also merge with adequacy of representation). While this memorandum discusses the requirements separately, the discussion of each element are related and arguments supporting one requirement frequently support the others.

102 (D. Mass. 2010) ("The threshold of commonality is not a difficult one to meet."). "'As long as a sufficient constellation of common issues binds class members together,' notwithstanding the existence of some individualized issues, a class may still be certified." *Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*, 285 F.R.D. 169, 179 (D. Mass 2012) (quoting *Mowbray*, 208 F.3d at 296).

While a single common question is sufficient to meet this standard, *see Dukes*, 564 U.S. at 359, the common questions here are numerous and include, but are not limited to: (1) whether Defendants violated the federal and Massachusetts securities laws; (2) whether Defendants offered and sold unregistered securities to the Class; (3) whether the NFTs constitute securities under federal law; (4) whether the NFTs constitute securities under Massachusetts law; (5) whether the NFTs can potentially qualify for an exemption from registration under federal law; (6) whether the members of the putative Class are entitled to rescission for failure to comply with federal and state law; (7) whether Class members suffered damages and what the appropriate measure of those damages is; and (8) whether the individual defendants were controlling persons of the company.

Courts addressing unregistered securities class actions have found these issues sufficient to satisfy the commonality requirement. *See Williams v. KuCoin*, No. 20 Civ. 2806, 2021 WL 5316013, at *11 (S.D.N.Y. Oct. 21, 2021) (questions common to the class included whether tokens at issue were securities, and whether defendant offered or sold those tokens to class members); *see also Davy v. Paragon Coin, Inc.*, No. 18 Civ. 0671, 2020 WL 4460446, at *6 (N.D. Cal. June 24, 2020) ("whether the PRG Tokens qualify as 'securities'" is a common question).

c.    *Lead Plaintiff's Claims are Typical*

The typicality prerequisite of Rule 23 requires that the claims of the representative plaintiff be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims satisfy Rule 23(a)(3) in that they are typical of the proposed Class, arising from the same alleged course of conduct and are based on the same legal theories as those brought on behalf of the proposed Class. Specifically,

Plaintiff and all Class members were injured in the exact same way, by being sold an unregistered security. Because Plaintiff and Class members share the same basic claims, legal theories, and evidence, Plaintiff is typical of the proposed class.

Courts addressing unregistered securities class actions have found these issues sufficient to satisfy the typicality requirement. *See Williams*, 2021 WL 5316013, at *12; *see also Balestra v. Cloud With Me Ltd.*, No. 18 Civ. 0804, 2020 WL 4370392, at *3 (W.D. Penn. July 2, 2020) (typicality satisfied where plaintiffs alleged that defendants violated registration provisions of the Securities Act by offering and selling unregistered securities).

          d.    *Lead Plaintiff will Fairly and Adequately Protect the Class*

Rule 23(a) also requires that the representative plaintiff "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry has two components: "The moving party must show first that the interests of the representative party will not conflict with the interests of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *In re AVEO Pharms., Inc. Sec. Litig.*, No. 13 Civ. 11157, 2017 WL 5484672, at *4 (D. Mass. Nov. 14, 2017) (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

Here, Lead Plaintiff purchased DraftKings NFTs during the Class Period and has actively participated in the litigation since the very beginning, assisting with drafting of the initial complaint filed in March 2023, far exceeding Rule 23(a)(4) bar for adequacy. Flohr Decl. ¶ 11; *see also AVEO Pharms.*, 2017 WL 5484672, at *4 (finding the adequacy element satisfied where proposed class representatives were "shareholders alleged to have suffered losses caused by purchases of [the company's] stock at inflated prices due to Defendants' material omissions."). Additionally, Lead Plaintiff's interests are not antagonistic to members of the Settlement Class. Flohr Decl. ¶ 12. Moreover, Lead Plaintiff has demonstrated his commitment to pursuing this

Action on behalf of the Settlement Class and has achieved a favorable result, which does not favor any member of the Settlement Class at the expense of others. *Id*.; *see also* § H.

Lead Plaintiff retained qualified and competent counsel, whose adequacy was recognized by the Court when it appointed Lead Counsel and Local Counsel for the Class. ECF. No. 32. Lead Plaintiff now seeks their appointment as Class Counsel for the Settlement Class. Class Counsel has between them decades of qualified experience handling large securities class actions and are "able to vigorously conduct the proposed litigation." *Dahhan v. OvaScience, Inc.*, No. 17 Civ. 10511, 2020 WL 2602138, at *4 (D. Mass. May 8, 2020) (quoting *Andrews*, 780 F.2d at 130).

2.    <u>The Settlement Class Satisfies Rule 23(b)(3)</u>

A class meets the certification requirements of Rule 23(b)(3) when it satisfies two criteria. First, common questions of law or fact must "predominate" over any purely individual questions. Fed. R. Civ. P. 23(b)(3). Second, class treatment should be superior to other available methods for the fair adjudication of the controversy. *Id*.

a.    *Common Questions Predominate*

Predominance requires that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013). Common issues predominate for all Lead Plaintiff's claims that sustained Defendants' motion to dismiss. These include, but are not limited to, whether the NFTs are unregistered securities, whether Defendants offered the NFTs to the proposed class, and whether the individual Defendants are control persons. In similar actions courts routinely find predominance met. *See Rensel*, 2021 WL 4134984, at *10 (citing cases and holding "claims for the sale of unregistered securities do not involve individual issues of reliance [and] courts have found that cases involving such claims meet the predominance requirement of Rule 23(b)(3)"); *see also In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 388 (D. Mass.

13

2011) (predominance test is defined "as requiring the Court to find that 'a sufficient constellation of common issues binds class members together.'" (quoting *Mowbray*, 208 F.3d at 296)).

Moreover, common questions predominate on damages. Under Section 12(a) of the Securities Act, damages are a return of the consideration paid with interest for the security upon tender, or if the security has been sold, the consideration paid with interest less the price received on resale. 15 U.S.C. § 77l. Similar damages are available under the Exchange Act and Massachusetts law. An arithmetic formula can be used to mechanically calculate damages for each member of the proposed class. Courts routinely find damages can be proven using a common methodology in Section 12(a) claims. *Zakinov v. Ripple Labs, Inc.*, No. 18 Civ. 6753, 2023 WL 4303644, at *6 (N.D. Cal. June 30, 2023) (finding common damages methodology); *see also In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 318 F.R.D. 435, 447 (D. Colo. 2015) (damages "common to the Class" because "Securities Act damages are calculated using a statutory formula"), *denying certification of appealability sub. nom. Downes v. Rivera*, No. 15 Civ. 0705, 2015 WL 9022001 (10th Cir. Dec. 8, 2015).

b.    *The Class is the Superior Method of Adjudication*

Finally, certification of this Settlement as a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the settlement class. The superiority element of Rule 23(b)(3) is satisfied here as this Circuit has consistently recognized that class actions are the superior way to resolve securities fraud cases. *See AVEO Pharms.*, 2017 WL 5484672, at *7 (finding superiority where "the cost of individual actions would be prohibitive compared to an individual class member's recovery, and the burden on the courts, with a sizable class, would be significant"); *see also In re Bos. Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 287-88 (D. Mass. 2009) (class certification is superior to other methods because it provides "the opportunity for individual investors to vindicate potentially valid claims, even where those

14

investors suffered relatively small damages and have insufficient resources to pursue litigation on their own"); *Evergreen*, 275 F.R.D. at 393 ("other judges of this Court have stressed that class actions are particularly appropriate for securities litigation because it may be the 'only practicable means of enforcing investors' rights'" (internal citation omitted)).

This is equally true in cases, like this, alleging digital assets qualify as unregistered securities. *See Ripple Labs*, 2023 WL 4303644, at *6 (class action is superior in digital asset class action); *Rensel*, 2021 WL 4134984, at *11 (same); *Williams*, 2021 WL 5316013, at *15-17 (same); *Cloud With Me*, 2020 WL 4370392, at *4 (same); *Davy*, 2020 WL 4460446, at *7 (same).

**B.    The Settlement, Notice Plan, and Plan of Allocation Warrant Preliminary Approval**

The Settlement is the result of vigorous litigation, the exchange of documents and other informal discovery, and extensive arm's length negotiations among the Parties with the assistance of experienced JAMS mediators, Jed D. Melnick, Esq. and Orna Artal, Esq. §§ G, 56; Flohr Decl. ¶ 8. The Settlement provides valuable benefits and monetary compensation to Class Members. § H. The Settlement compares favorably to previous settlements when weighed against the risks associated with continued litigation. Having weighed the likelihood of success and inherent risks and expense of litigation, Lead Plaintiff and Class Counsel strongly believe that the proposed settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2).

1.    <u>The Settlement Should Be Preliminarily Approved</u>

Preliminary approval is the first step in approving a class action settlement. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 58 (D. Mass. 2005). The Court reviews the proposed settlement to determine whether it is within the "range of reasonableness," *id.* at 73 (citation omitted), and is "fair, adequate, and reasonable." *Durrett*, 896 F.2d at 604. The analysis begins with the premise that there is generally a presumption in favor of settlement if the parties negotiated at arm's-length

and were sufficiently informed about the strengths of the claims and defenses and risks of continued litigation. *See Hochstadt*, 708 F. Supp. 2d at 107 (citing *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009)); *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("there is a presumption in favor of the [class action] settlement"); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) (same); *see additionally Hotel Holiday Inn de Isla Verde v. N.L.R.B.*, 723 F.2d 169, 173 n.1 (1st Cir. 1983) (settlement agreements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." (citation omitted)).

The First Circuit has enumerated various factors to consider in the preliminary approval analysis, including, "(1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration." *In re Relafen*, 231 F.R.D. at 72 (citing *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003)). The most important factor is the "likelihood of success," or "the strength of the case for the plaintiffs on the merits, balanced against the amount offered in settlement." *Schlusselberg v. Colonial Mgmt. Assoc., Inc.*, 389 F. Supp. 733, 735 (D. Mass. 1974). Courts are mindful that settlements are born out of compromise. *See Rolland v. Cellucci*, 191 F.R.D. 3, 15 (D. Mass. 2000).

In evaluating the first factor, the Court should also weigh the considerations listed in the sixth factor: the potential "risk, complexity, expense and duration" of the litigation. *In re Relafen*, 231 F.R.D. at 72. At the time the Parties agreed to the Settlement, they were engaged in vigorous litigation and further litigation promised to be lengthy and complex. The Parties would have had to brief class certification, dispositive motions, and pretrial motions, including motions concerning

anticipated expert reports and testimony. At every additional step in the litigation, Lead Plaintiff faced meaningful challenges to his ability to not only certify a class but also obtain recovery on behalf of the class, which strongly supports preliminary approval of the Settlement. *See Rolland*, 191 F.R.D. at 9 (approving settlement when it was "doubtful that Plaintiffs could have obtained relief at trial in the comprehensive and detailed manner [of] the Settlement Agreement.").

Lead Plaintiff and Class Counsel achieved a favorable settlement and relieved the Class of the burdens and risks of further litigation. *See id*. at 10 ("When comparing the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation, there are clearly strong arguments for approving a settlement") (internal quotations and citations omitted). Here, Plaintiff would argue, among other things, that the total amount of damages should be the total amount paid by Class Members for DraftKings' NFTs. Defendants would argue, among other things, that Plaintiff's damages should be offset by proceeds paid to Class Members, including in the form of prize money, rebates, and credits. Taking these competing arguments into consideration, the range of realistic and supportable damages range from $18,000,000 to $58,000,000, and the recovery, therefore, amounts to 26% of the mid-point of potentially recoverable damages in this case—an excellent recovery under the circumstances. *See In re Relafen*, 231 F.R.D. at 74 (approving a settlement being "approximately 26% or 55% of the alleged damages" as calculated by opposing experts).

The second factor is opposition to the settlement, but as the Parties have not yet sent the notice, "the only practical way to ascertain the overall level of objection to the proposed settlement is for notice to go forward, and to see how many potential class members choose to . . . object to its terms at the Final Fairness Hearing." *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 63 (D. Mass. 2010). The Court will have the opportunity to more comprehensively

17

review the Settlement Class's reception to the Settlement at the Fairness Hearing.

The third factor that courts consider is the status of the litigation. *In re Relafen*, 231 F.R.D. at 73. Class Counsel conducted substantial investigation and analysis of Lead Plaintiff's claims, commencing even before the filing of the initial pleading, and, throughout the course of the litigation and settlement efforts, reviewed and analyzed documents pertaining the DraftKings' NFTs and the DK Marketplace. Flohr Decl. ¶ 3. This proposed Settlement comes after the Court sustained all of Lead Plaintiff's claims in response to Defendants' motion to dismiss. ECF No. 60. The Parties exchanged discovery in advance of mediation, allowing them to comprehensively evaluate the strengths and weaknesses of the Action. Flohr Decl. ¶ 9. Through this discovery, Class Counsel was able to evaluate the risks of continued litigation and the amount of damages that may be recoverable to the Settlement Class. *See Hochstadt*, 708 F. Supp. 2d at 107 (explaining that "the applicable standard" asks whether the parties "conducted [] sufficient discovery . . . to make an intelligent judgment about settlement."). Furthermore, the shutdown of the DK Marketplace following the motion to dismiss order and subsequent payments to potential Settlement Class Member present additional damages issues that would have to be fully briefed and which may result in a lower available damages. Flohr Decl. ¶ 9. Given this information, it is Class Counsel's opinion that the Settlement is fair, reasonable, and adequate to the Settlement Class. *See Hochstadt*, 708 F. Supp. 2d at 108 (granting preliminary approval to settle a case "at a stage where both the court and counsel are able to evaluate the merits of the claims.").

Finally, for the fourth and fifth factors (the opinion of competent counsel and the conduct of negotiations), courts consider class counsel's background and whether the settlement is the result of negotiation that occurred at arm's-length. *In re Lupron Mktg. & Sales Pracs. Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004). The Settlement is the product of an extensive arm's-length

process involving experienced neutral mediators. Flohr Decl. ¶ 8. Further, Class Counsel is experienced in complex class action litigation, thoroughly understands the factual and legal issues involved in the Action, and believes the Settlement is fair and reasonable. *Id*. ¶ 3. Therefore, the fourth and fifth factors weigh in favor of Settlement approval. *Rolland*, 191 F.R.D. at 10 ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight") (citing *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 72 (D. Mass. 1999)); *Hochstadt*, 708 F. Supp. 2d 107 (granting preliminary approval based on finding of arm's-length negotiations).

In sum, the Settlement is the product of vigorous litigation and serious, arm's-length negotiation by experienced and well-informed counsel, adequately reflects the strength of the Parties' claims and defenses, is based on sufficient discovery and information, and provides significant relief to the Settlement Class. Accordingly, the Court should find the Settlement is fair, reasonable, and adequate, and merits preliminary approval.

## 2.    The Notice Plan Should Be Preliminarily Approved

In addition to preliminarily approving the proposed Settlement, the Court must approve the proposed means of notifying the Settlement Class Members. Fed. R. Civ. P. 23(c)(2). Due process and Rule 23(e) do not require that each Class Member receive notice, but rather that class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974).

Here, the Notice Program is designed to reach as many Settlement Class Members as

possible. It satisfies due process considerations and meets Rule 23(e)'s requirements. Members of the Settlement Class will receive and have access to materials clearly describing: (i) the terms and operation of the Settlement; (ii) the nature and extent of the Released Claims; (iii) the maximum attorneys' fees and costs, and service award that may be sought; (iv) the procedure and timing for objections and opting out; and (v) the date and location of the hearing impacting their rights. §§ 12, 15, 19 & Exs. A-1–4. Lead Plaintiff submits that the Notice Program is reasonable and provides the best notice practicable under the circumstances. *Hill v. State St. Corp.*, No. 9 Civ. 12146, 2015 WL 127728, at *16 (D. Mass. Jan. 8, 2015) (quoting *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974)) ("[T]he settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them'").

### 3.    The Plan of Allocation Should Be Preliminarily Approved

The proposed Plan of Allocation provides recovery to Settlement Class Members in an amount that will equal their recognized loss associated with the claims involved in this Action. Ex. A-2. The Plan of Allocation was drafted in consultation with a qualified firm, Peregrine Economics, to fairly compensate Settlement Class Members for losses resulting from the allegations contained in the Complaint. Flohr Decl. ¶ 13. In light of the equitable treatment of all Settlement Class Members and the recommendation of competent and experienced counsel, the Court should find that the plan of allocation is also fair, reasonable, and adequate.

## VI.    CONCLUSION

For the reasons stated herein, Lead Plaintiff respectfully requests that the Court grant the Motion for Preliminary Approval of the Class Action Settlement and enter an order substantially similar to the Proposed Approval Order, attached as Exhibit A to the Settlement Agreement.

Dated: February 26, 2025                    Respectfully submitted,

                                            **KIRBY McINERNEY LLP**

                                            */s/ Sarah E. Flohr*
                                            Sarah E. Flohr (*pro hac vice*)
                                            250 Park Avenue, Suite 820
                                            New York City, New York 10177
                                            212.371.6600
                                            sflohr@kmllp.com

                                            Anthony F. Fata (*pro hac vice*)
                                            Cormac Broeg (*pro hac vice*)
                                            211 West Wacker Drive, Suite 550
                                            Chicago, Illinois 60606
                                            312.767.5180
                                            afata@kmllp.com
                                            cbroeg@kmllp.com
                                            *Lead Counsel for Lead Plaintiff Dufoe*

                                            **BERMAN TABACCO**
                                            Patrick T. Egan (BBO #637477)
                                            Justin N. Saif (BBO #660679)
                                            1 Liberty Square
                                            Boston, Massachusetts 02109
                                            617.542.8300
                                            pegan@bermantabacco.com
                                            jsaif@bermantabacco.com
                                            *Local Counsel for Lead Plaintiff Dufoe*

                                            **HANNAFAN & HANNAFAN, LTD.**
                                            Blake T. Hannafan (*pro hac vice*)
                                            161 North Clark Street, Suite 1700
                                            Chicago, Illinois 60601
                                            312.527.0055
                                            bth@hannafanlaw.com
                                            *Additional Counsel for Lead Plaintiff Dufoe*

                                            **G. DOWD LAW LLC**
                                            George Dowd (*pro hac vice*)
                                            161 North Clark Street, 16th Floor
                                            Chicago, IL 60601
                                            312.854.8300
                                            george.dowd@gdowd.law
                                            *Additional Counsel for Lead Plaintiff Dufoe*

## **CERTIFICATE OF SERVICE**

I, Sarah E. Flohr, hereby certify that on February 26, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

Dated: February 26, 2025

/s/ *Sarah E. Flohr*
Sarah E. Flohr