Re: Dufoe v. DraftKings Inc.
Case No. 1:23-cv-10524-DJC
United States District Court
District of Massachusetts

FILED
IN CLERKS OFFICE

2025 JUL 24  PM 1: 34

U.S. D      URT
DISTRICT OF M  SS.

# SUPPLEMENTAL STATEMENT IN SUPPORT OF OBJECTION

This supplemental statement does not assert new legal claims but expands upon the factual basis of the original objection, incorporating material developments from ECF 96 and ECF 98, as well as post-filing interactions with class counsel that bear directly on the fairness and adequacy of the proposed settlement. This submission highlights factual matters and structural elements that further support rejection of the proposed settlement.

Submitted by: Cory Siemon
341 Bellestri Drive
Ballwin, MO 63021
Date: July 19, 2025

To the Honorable Court,

*Pursuant to Rule 23(e)(5)(A), I respectfully submit this supplemental statement in support of my previously filed objection (May 16, 2025) to the proposed class action settlement in Dufoe v. DraftKings, Case No. 1:23-cv-10524-DJC. This submission incorporates post-objection developments, including new filings (ECF 96 and 98), public disclosures, and direct interactions with Class Counsel.*

*This filing supplements and reinforces my position that the proposed resolution is not fair, reasonable, or adequate as required under Rule 23(e)(2).*

## I. Due Process Violations

On June 17, 2025, I was contacted directly by Class Counsel attorneys Anthony Fata and Cormac Broeg. Rather than engage with the substance of my filed objection, they attempted to pressure me into withdrawing it. They warned that if the settlement failed, any future recovery would be worse and stated they would formally and aggressively oppose my position in court unless I stood down.

They argued that DraftKings NFTs would likely be classified as unregistered securities, limiting any recovery to a rescission theory based on purchase price minus contest winnings. According to their math, my $63,000 portfolio results in a recognized loss of approximately $10,000. Under the Plan of Allocation's pro rata structure for the remaining $6.67 million in funds, they estimated I would receive less than $1,000.

Furthermore, Class Counsel cited DraftKings' issuance of approximately $20 million in "conclusion payments" as evidence of restitution. But these payments were made months before class certification, with no court approval or input from Class Counsel. While it's reasonable to subtract these amounts from the losses of those who accepted them, they should not be treated as evidence of class relief or credited toward the adequacy of this settlement.

The reality is this: those conclusion payments, issued months before class certification, often produced materially better outcomes than this proposed settlement. I personally declined a $1,583.87 conclusion payment because I believed the formal legal process would deliver a fairer result. Had I accepted it, my recognized loss would have been reduced to $8,416.13, and based on the projected ten percent pro rata payout, I would

have received an additional $842, bringing my total recovery to approximately $2,426. Instead, by relying on justice through the courts, I now stand to receive less than $1,000.

That is less than what Class Counsel seeks to charge for a single hour of billable time. (See ECF 98, Exhibits A1 and B1.)

Mr. Fata and Mr. Egan - with decades of securities litigation experience and hourly rates exceeding $1,100, I had expected a more rigorous valuation of class member losses.

This disparity is not merely economic, it raises serious due process concerns. Those who declined early, unsupervised payments in good faith now face disproportionate harm for relying on the judicial system.

## II. Opt-Outs from Major Holders

Recent filings reveal that several of the largest known class members, based on the settlement's own Recognized Loss formula, have chosen to opt out entirely. According to the Exclusion Report (ECF No. 96, Exhibit F), these include:

- Brian Napier – $108,870.74
- Todd Krummel – $358,825.82
- Anthony Colarusso (aka "PAPA1") – $443,602.43

Collectively, these three opt-outs represent over $911,000 in Recognized Losses. Their withdrawal from the class is not incidental, it signals informed dissent by well-represented parties. If the individuals most financially affected by DraftKings' conduct believe this deal undervalues their claims, it raises serious doubts about whether the settlement is fair to anyone but the defendants and the lawyers.

Notably, all three are represented by the same legal team—Brown, Neri, Smith & Khan LLP—whose attorneys (Andrew Purdy, Tim Laoreux, and Kaitlyn Alexander) are listed as contacts for related claims. The firm's coordinated representation of these large stakeholders underscores that these are not isolated opt-outs, they are reasoned decisions by parties with access to competent legal advice and analysis.

## III. Attorney Fees and Representation

Class Counsel is requesting $3,333,333.33 in fees, one-third of the total settlement, while billing at rates reaching $1,250 per hour. The average billing rate approaches $1,000 per hour. Meanwhile, the majority of class members are expected to receive either nominal amounts, single-digit payouts, or nothing at all. For investors with good-faith holdings, like myself, projected recovery is less than 2% of the original investment.

Adding to this disparity, the Lead Plaintiff, Justin Dufoe, is set to receive a $50,000 service award. Public records show that Mr. Dufoe purchased over 200,000 booster packs and was one of the platform's most active traders. This aligns his behavior with the Plan

of Allocation, which favors high-frequency trading over long-term utility-driven engagement.

This structure, with millions allocated to counsel, tens of thousands to one plaintiff, and nominal sums to the remainder, demonstrates a misalignment of incentives. The settlement prioritizes administrative efficiency over just compensation.

A fair resolution would recognize the diversity of class member experiences and proportion recovery accordingly. Instead, this agreement appears to have been constructed to maximize plaintiff counsel fees and minimize defendant legal liability, rather than to deliver justice.

## IV. A Retreat from Justice

At the heart of this case is the allegation that DraftKings sold unregistered securities, a serious violation of federal securities law. During our phone conversation, Class Counsel acknowledged that DraftKings NFTs meet the statutory definition of unregistered securities. Yet in the same discussion, they expressed diminished confidence in the case's prospects, citing a shifting regulatory environment and weakened enforcement as justification for accepting the proposed settlement.

Class Counsel believes the law was broken, but declines to test it.

This is not a principled resolution; it is a calculated withdrawal. While some limited discovery may have occurred, there was no pursuit of expert testimony, no development of the strongest liability theories, and no intent to bring the matter to trial. Instead, Class Counsel opted for a guaranteed outcome, a settlement focused on administrative closure, devoid of any admission of wrongdoing or meaningful structural reform. This resolution not only fails to make harmed participants whole but risks normalizing harm as an acceptable business expense on future platforms.

DraftKings exits with no admission, minimal penalty, and no obligation to change course. Class members receive little to no compensation. And Class Counsel walks away with $3.3 million in fees.

The narrowly defined "recognized losses" in the Plan of Allocation, combined with DraftKings' pre-certification "conclusion payments", exemplify a broader pattern of minimizing perceived harm while manufacturing the appearance of redress. These payments, issued unilaterally and outside of court supervision, reinforce a troubling dynamic of private inducements used to suppress legal exposure. The proposed settlement follows this same pattern. It reflects a strategic alignment between DraftKings and Class Counsel that prioritizes incentives over accountability.

This litigation should not be treated like a product recall. If DraftKings violated securities law, the appropriate remedies are rescission, disgorgement, and legal accountability, not administrative rebates, negotiated shortcuts, or reputational protection.

If Class Counsel is unwilling to litigate due to perceived regulatory weakness, they should not be entrusted with waiving the rights of the class they purport to represent.

**Conclusion**

For the reasons outlined above, I respectfully maintain my objection and urge the Court to reject final approval of this settlement. A just outcome must address both the financial harm stemming from asset purchases and the broader loss of platform utility. The proposed agreement rewards expedience over equity. Class members deserve a resolution that reflects the seriousness of the claims, the magnitude of the losses, and the core purpose of Rule 23: fair and adequate representation.

Respectfully submitted,

Cory Siemon
Class Member, Dufoe v. DraftKings

## CERTIFICATE OF SERVICE

I, Cory Siemon, hereby certify that on July 19, 2025, I caused a true and correct copy of the foregoing "Supplemental Statement in Support of Objection" to be served via U.S. Mail upon the following:

**Court Filing – For the Judge**
*Clerk of the Court*
U.S. District Court for the District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, MA 02210

**Lead Counsel for Plaintiffs**
*Anthony F. Fata, Esq.*
Kirby McInerney LLP
211 West Wacker Drive, Suite 550
Chicago, IL 60606

**Defense Counsel for DraftKings**
*Brian T. Frawley, Esq.*
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

I further certify that a copy was mailed to the above addresses for the purpose of service and docketing in *Dufoe v. DraftKings*, Case No. *1:23-cv-10524-DJC*.

Signed: Cory Siemon
Dated: July 19, 2025