UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUSTIN DUFOE, on Behalf of Himself and All Others Similarly Situated,<br><br>    Plaintiff,<br>  v.<br><br>DRAFTKINGS INC., JASON D. ROBINS, JASON K. PARK, and MATTHEW KALISH,<br><br>    Defendants. | Case No. 23-cv-10524-DJC<br><br>CLASS ACTION<br><br>Honorable Judge Denise J. Casper |

**LEAD PLAINTIFF'S MOTION FOR AUTHORIZATION
TO DISTRIBUTE NET SETTLEMENT FUND TO AUTHORIZED CLAIMANTS
AND SUPPORTING MEMORANDUM OF LAW**

# **TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | | PRELIMINARY STATEMENT ................................................................................ | 1 |
| II. | | CLAIMS ADMINISTRATION PROCESS ............................................................... | 3 |
| | A. | Procedures and Review ................................................................................. | 5 |
| | B. | Disputed Late Claims .................................................................................... | 7 |
| | C. | Disputed Claim Calculations of Recognized Loss ....................................... | 8 |
| III. | | DISTRIBUTION PLAN OF THE NET SETTLEMENT FUND ............................. | 8 |
| | A. | Distribution of the Net Settlement Fund to Authorized Claimants ......... | 9 |
| | B. | Additional Distribution(s) of the Net Settlement Fund ............................. | 9 |
| IV. | | FEES AND EXPENSES OF THE SETTLEMENT ADMINISTRATOR ........................ | 10 |
| V. | | CONCLUSION ........................................................................................................... | 11 |

i

Pursuant to Federal Rule of Civil Procedure 23(e), Lead Plaintiff Justin Dufoe,[1] on behalf of himself and the Settlement Class, hereby moves this Court for entry of the accompanying Proposed Order Approving Settlement Distribution to Authorized Claimants (the "Distribution Order") in the above-captioned class action (the "Action"), consistent with the accompanying Declaration of Kathleen M. Brauns Regarding Distribution Plan ("Brauns Distribution Declaration" or "Brauns Distribution Decl."), dated January 26, 2026, submitted on behalf of the Court-approved Settlement Administrator, A.B. Data ("A.B. Data" or "Settlement Administrator"). In compliance with Local Rule 7.1(a)(2), Lead Counsel conferred with counsel for Defendants, who take no position on the relief requested.[2]

## I.   PRELIMINARY STATEMENT

Pursuant to the Settlement Agreement, Defendants agreed to pay, or cause to be paid, $10,000,000 to settle the claims asserted in the Action. § 1(uu). The Court granted preliminary approval of the Settlement and notice plan by an Order entered February 28, 2025 (ECF No. 89) (the "Preliminary Approval Order").

In accordance with the Preliminary Approval Order, A.B. Data caused a copy of the Email Notice to be emailed to 1,554,528 potential Settlement Class Members based on the lists it received from Lead Counsel and DraftKings. Brauns Distribution Decl. ¶ 3. For the 12,284 potential Settlement Class Members whose email address was not provided or where the Email Notice was

---

[1] Unless otherwise indicated, defined terms shall have the definitions set forth in the Stipulation of Settlement ("Settlement" or "Settlement Agreement"), which was filed on February 26, 2025 (ECF No. 87-2). Citations to the Settlement Agreement are abbreviated as "§ ___."

[2] Pursuant to the Settlement Agreement, previously approved by the Court, Defendants have no interest in the relief sought by this Motion. See § 27 ("No Defendant . . . shall be permitted to review, contest, or object to any Proof of Claim, or any decision of the Settlement Administrator or Class Counsel with respect to accepting or rejecting any claim for payment.").

1

undeliverable, A.B. Data provided direct notice utilizing the Postcard Notice. *Id.* ¶ 4. In accordance with Paragraph 10(c) of the Preliminary Approval Order, on April 4, 2025, A.B. Data caused the Publication Notice to be transmitted once over the *PR Newswire*. *Id.* ¶ 5. The Email Notice, Postcard Notice, and Publication Notice informed Settlement Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit Claim Forms by no later than July 21, 2025. *Id.* ¶ 6.

A.B. Data established and continues to maintain the Settlement Website (www.DraftKingsNFTSettlement.com) dedicated to this Action, and an email box (info@DraftKingsNFTSettlement.com), toll-free helpline (877-833-9186), and P.O. Box (DraftKings NFT Settlement, c/o A.B. Data, Ltd., P.O. Box. 173039, Milwaukee, WI 53217) to assist Settlement Class Members. *Id.* ¶ 7. The Settlement Website informed Settlement Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit Claim Forms no later than July 21, 2025. *Id.* ¶ 8. If a Settlement Class Member contacted A.B. Data via email, mail, or called the toll-free helpline, they were informed of the requirement to submit Claim Forms no later than July 21, 2025. *Id.* ¶ 9.

The Court granted final approval of the Settlement and the proposed Plan of Allocation by an Order and Final Judgment dated July 30, 2025 (ECF No. 106) (the "Final Approval Order"). The Effective Date of the Settlement occurred on September 1, 2025. § 16. Accordingly, the Net Settlement Fund may be distributed to Authorized Claimants. § 29.

If entered by the Court, the proposed Distribution Order will, among other things: (i) approve A.B. Data's administrative recommendations accepting and rejecting claims submitted herein; (ii) direct the distribution of the Net Settlement Fund to Settlement Class Members whose claims have been accepted as valid and approved by the Court; (iii) establish a bar date beyond

which no new claims will be allowed; (iv) approve, if any funds remain after the Initial Distribution, payment of the Settlement Administrator's additional Notice Costs and Administration Costs incurred in administering the Settlement in excess of the $180,000 authorized by the Final Approval Order; (v) approve payment of any residual balance in the Net Settlement Fund after all unpaid costs, expenses, and Taxes, to an appropriate cy pres recipient as to be identified by Defendants and approved by Lead Plaintiff and the Court; and (vi) authorize destruction of Claim Forms after the distribution is complete.

## II.     CLAIMS ADMINISTRATION PROCESS

Under the terms of the Settlement Agreement and the Notice, all Settlement Class Members wishing to participate in the distribution of the Net Settlement Fund were required to submit Claim Forms no later than July 21, 2025. ECF No. 87-2. Class Counsel had discretion under the Settlement Agreement to admit claims submitted after the July 21, 2025 claims deadline, but before the July 30, 2025 Settlement Hearing. § 27. As set forth in the accompanying Brauns Distribution Declaration, as of January 23, 2026, A.B. Data has completed the processing of the 14,720 Claim Forms. Brauns Distribution Decl. ¶ 10.

A.B. Data has prepared detailed reports of Settlement Class Members who submitted: (1) timely and eligible claims with an individual recognized loss under the Plan of Allocation (Ex. B-1);[3] (2) eligible claims with an individual recognized loss under the Plan of Allocation after the July 21, 2025 claims deadline, but before the July 30, 2025 Settlement Hearing (Ex. B-2); (3) untimely claims with an individual recognized loss under the Plan of Allocation after the July 30, 2025 Settlement Hearing and subsequently requested that the untimeliness of their claims be

---

[3] Ten of these Settlement Class Members with an individual recognized loss under the Plan of Allocation disputed A.B. Data's calculation of their recognized loss and are thus listed in both Exhibit B-1 and Exhibit C.

3

excused (Ex. B-3); (4) timely or untimely claims with no individual recognized loss under the Plan of Allocation (Ex. B-4); (5) untimely claims with an individual recognized loss under the Plan of Allocation after the July 30, 2025 Settlement Hearing and did not request the untimeliness of their claims be excused (Ex. B-5); and (6) individuals who submitted claims but were not members of the Settlement Class (Ex. B-6). These reports are annexed as Exhibits B-1 through B-6 to the Brauns Distribution Declaration, respectively. *Id.* ¶ 29.

Based on these determinations, A.B. Data, in consultation with Class Counsel, recommends that a distribution to the claimants listed in Exhibits B-1and B-2 be authorized, no distribution be made to the claimants listed in Exhibit B-4, and the claims listed in Exhibit B-6 be rejected. *Id.* ¶ 30.

For the reasons stated in Lead Plaintiff's Response to Late Claimant David Kipe's *Pro Se* Motion for Equitable Tolling and Acceptance of Late Filed Claim ("Kipe Response," ECF No. 116), the Consolidated Response to Late Claimants' *Pro Se* Motions for Equitable Tolling and to Accept Late Filed Claims ("Consolidated Response," ECF No. 117) and Lead Plaintiff's Response to Late Claimant Nyree Hinton's *Pro Se* Petition for Acceptance of Untimely Claim ("Hinton Response," ECF No. 128), Class Counsel takes no position as to whether distribution to the claimants listed in Exhibit B-3 should be authorized.[4] For these same reasons, Class Counsel takes no position as to whether distribution to the claims listed in Exhibit B-5 should be authorized.

---

[4] As Lead Plaintiff and Class Counsel take no position on whether the claims identified in Exhibit B-3 should be authorized, bracketed, alternative language is provided in paragraph 3 of the Distribution Order. The language in the proposed order presents a binary option solely in the interest of simplicity. As discussed in the Kipe Response, the Court may evaluate each late claim on an individual basis and a decision by the Court to accept some late claims does not necessitate the acceptance of all late claims. *See In re Valdez*, 289 Fed. App'x 204, 206 (9th Cir. 2008) (affirming district court's decision to allow late claimants with "plausible excuses for not filing timely" and disallowing claimants who offered no plausible excuse).

4

Class Counsel notes that the claimants listed in Exhibit B-5 have not requested that the untimeliness of their claims be excused.

Additionally, A.B. Data prepared reports of the claimants who disputed A.B. Data's calculation of their individual recognized loss under the Court-approved Plan of Allocation. These reports include (i) claimants who disputed the A.B. Data's determination that they had no loss under the Plan of Allocation; and (ii) claimants with a recognized loss under the Plan of Allocation who disputed the amount of their recognized loss. This report is annexed as Exhibit C to the Brauns Distribution Declaration. A.B. Data, in consultation with Class Counsel, recommends that the Court approve A.B. Data's calculation of individual recognized loss using the Court-approved Plan of Allocation in regards to the Claimants listed on Exhibit C.

### A.     Procedures and Review

A.B. Data conducted an extensive review of all Claim Forms received. Brauns Distribution Decl. at ¶ 11. Of the 14,720 claims received, A.B. Data determined that 106 were duplicates of other claims. *Id*. ¶ 12. Next, A.B. Data determined that 249 were not Settlement Class Members because DraftKings had no record of their purchase or holding of a DraftKings NFT. *Id*. ¶ 13, Ex. B-6. After removing duplicates and non-class members, A.B. Data calculated the claimants' recognized losses by applying the Court-approved Plan of Allocation. *Id*. ¶ 14. Of the 14,365 claims from Settlement Class Members, A.B. Data determined that 10,779 had no recognized loss under the Plan of Allocation. *Id*. ¶ 15, Ex. B-4. This category includes 8,854 claims that were gifted DraftKings NFTs and had no primary or secondary purchases and 2,195 claims whose secondary receipts, prize receipts, and closure receipts cumulatively exceeded their primary and secondary purchases. *Id*. ¶ 15, Ex. B-4.

On October 7, 2025, A.B. Data sent four different notices to claimants who submitted a Claim Form to inform them of the eligibility of their claims and of their individual recognized loss

5

under the Plan of Allocation. *Id*. ¶ 16. Every claimant who submitted a Claim Form received one of these four notices. *Id*. These notices included: (1) a Claim Calculation Notice to all claimants with a recognized loss under the Court-approved Plan of Allocation who submitted claims on or before July 30, 2025, informing them of A.B. Data's determination of their recognized loss (*id*. ¶ 17, *see* Ex. A-1 to the Brauns Distribution Decl.); (ii) an Untimely Claims Notice to all Claimants with a recognized loss under the Court-approved Plan of Allocation who submitted claims after July 30, 2025, informing them that their claim was untimely and could not be accepted under the terms of the Settlement and could only be accepted by the Court (*id*. ¶ 17, *see* Ex. A-2 to the Brauns Distribution Decl.);[5] (iii) a Claim Rejection Notice to all Claimants with no recognized loss under the Court-approved Plan of Allocation informing them that they had no recognized loss and would not receive a distribution from the Settlement Fund (*id*. at ¶ 17, *see* Ex. A-3 to the Brauns Distribution Decl.); and (iv) a Claim Rejection Notice in response to all duplicate claims informing the claimants that their duplicate claims would not be accepted (*id*. ¶ 17, *see* Ex. A-4 to the Brauns Distribution Decl.).

As set forth in the Brauns Distribution Declaration, of the 14,720 claims received and processed by A.B. Data through January 23, 2026, A.B. Data has determined that 3,544 are eligible to receive a distribution because they were submitted before the July 30, 2025 Settlement Hearing and have a recognized loss. Exs. B-1, B-2. These 3,544 claims have a total recognized loss of $9,696,396.25. *Id*. ¶ 19. If only timely claims and late claims received on or before the Settlement Hearing of July 30, 2025 are accepted, these Settlement Class Members would recover 67.52% of their individual recognized loss. *Id*. at ¶ 20.

---

[5] Late claimants who submitted Claim Forms after October 7, 2025, received the same Untimely Claim Notices after the submission of their claims. Brauns Distribution Decl., ¶ 17 n.2.

### B. Disputed Late Claims

The claims processed by A.B. Data include 93 claims that were postmarked or received after the Settlement Hearing on July 30, 2025, of which 42 had recognized losses. *Id*. ¶ 21. All claimants who submitted late claims with recognized losses had been sent an Email Notice using the information provided by DraftKings pursuant to the Court's Preliminary Approval Order and each of these emails were sent successfully without notification of a bounce. *Id*. ¶ 22. Late claimants with a recognized loss were advised in the Untimely Claim Notice that if they believed the untimeliness should be excused, they must submit a written statement to A.B. Data within 21 days and that they had the right to petition the Court to accept their claim. *Id*. ¶ 23, Ex. A-2. Of these 42 late claimants, 27 responded to the Untimely Claim Notice requesting that the untimeliness of their claim be excused. *Id.* ¶ 24. The responses to the Untimely Claim Notices are provided to the Court for its consideration in Exhibit B-3. The 15 late claimants who failed to respond to the Untimely Claim Notice are listed in Exhibit B-5.

A.B. Data has calculated the aggregate recognized loss of the late claimants listed in Exhibit B-3 to be $1,459,687.82. If all the late claimants listed in Exhibit B-3, are accepted, the estimated recovery percentage for each Settlement Class Member would decrease from 67.52% to 58.68%. *Id*. ¶ 26. A.B. Data has calculated the aggregate recognized loss of the late claimants listed in Exhibit B-5 to be $89,483.11. If all the late claimants listed in Exhibits B-3 and B-5 are accepted, the estimated recovery percentage for each Settlement Class Member would decrease from 67.52% to 58.22%. As stated in the Kipe Response, the Consolidated Response, and the Hinton Response, Lead Plaintiff and Class Counsel take no position as to whether late claims should be accepted.

To facilitate the efficient distribution of the Net Settlement Fund, there must be a final cut-off date after which no more claims will be accepted. *Id*. ¶ 28. Accordingly, Lead Plaintiff and

Class Counsel respectfully request that the Court order that no new claims received or postmarked after January 26, 2026 may be eligible for payment.

### C. Disputed Claim Calculations of Recognized Loss

A.B. Data received 18 challenges to its administrative determinations regarding the calculation of recognized loss. *Id*. ¶ 33. Of these requests, five (5) were made by claimants who are not Settlement Class Members, also listed in Exhibit B-6. *Id*. ¶ 34. Three (3) were made by Settlement Class Members with no documented primary or secondary purchases or with no recognized loss under the Plan of Allocation, also listed in Exhibit B-4. *Id*. ¶ 35. Ten (10) requests were made by Settlement Class Members with a recognized loss under the Plan of Allocations, also listed in Exhibit B-1. *Id*. ¶ 36. One (1) of these ten claimants did not dispute the data used in the calculations but exclusively objected to the Court-approved Plan of Allocation. *Id*. ¶ 37.

In an attempt to resolve the disputes without the Court's intervention, A.B. Data contacted each claimant requesting Court review to answer any questions and explain the Plan of Allocation and A.B. Data's determinations. *Id*. ¶ 38. As a result of these efforts, one (1) claim for which Court review was requested has been retracted. *Id*. The 17 claims that remain unresolved were advised in writing of their rights and the reasons why their claims were denied. *Id*. ¶ 39. In accordance with the Settlement Agreement, A.B. Data submits these disputes for the Court's review. § 25. A.B. Data recommends that the Court reject these claimants' disputes of recognized loss calculations under the Court-approved Plan of Allocation. *Id*. ¶ 40, Ex. C.

### III. DISTRIBUTION PLAN OF THE NET SETTLEMENT FUND

A.B. Data recommends the following plan for the distribution of the Net Settlement Fund, which is set forth in full in the Brauns Distribution Declaration at paragraph 41 (the "Distribution Plan").

8

### A. Distribution of the Net Settlement Fund to Authorized Claimants

Pursuant to the proposed Distribution Plan, A.B. Data will distribute the Net Settlement Fund, after deducting all payments approved by the Court and Taxes, to Court-approved Authorized Claimants who would receive at least $5.00 based on their Recognized Loss, as calculated pursuant to the Court-approved Plan of Allocation (the "Initial Distribution"). § 28. Pursuant to the Settlement Agreement, A.B. Data will eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to be less than $5.00. *Id.* ¶ 41(a).

In order to encourage Authorized Claimants to promptly deposit their payments, Class Counsel and A.B. Data propose that the distribution checks bear the notation, "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF ISSUE DATE." *Id.* ¶ 41(b). Authorized Claimants who do not negotiate their checks within the time allotted or on the conditions set forth in paragraph 41(b) of the Brauns Distribution Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to all such stale-dated checks will be available to be re-distributed in any subsequent distribution as described below. *Id.*

### B. Additional Distribution(s) of the Net Settlement Fund

After A.B. Data has completed the Initial Distribution and made reasonable and diligent efforts to have Authorized Claimants negotiate their Initial Distribution Checks, but no earlier than six (6) months after the Initial Distribution, A.B. Data shall pay from the remaining balance of the Net Settlement Fund any amounts mistakenly omitted from the Initial Distribution to Authorized Claimants who would receive at least a $5.00 payment. *Id.* ¶ 41(c).

If any funds remain in the Net Settlement Fund after the Initial Distribution and any amounts mistakenly omitted from the Initial Distribution have been paid, A.B. Data shall be

authorized to pay itself for any Notice Costs and Administration Costs incurred in administering the Settlement in excess of the $180,000 authorized by the Final Approval Order. *Id.* ¶ 41(d); § 28. *See* § IV, *infra*.

If any funds remain in the Net Settlement Fund after the Initial Distribution, any amounts mistakenly omitted from the Initial Distribution, and any additional Notice and Administration Costs have been paid, A.B. Data shall, if it determines in consultation with Class Counsel that it would be economically feasible to do so, conduct a second distribution of the Net Settlement Fund (the "Second Distribution"). *Id.* ¶ 41(e). In the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution (*e.g.*, the funds for all void stale-dated checks), after deducting A.B. Data's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of a Second Distribution), and after payment of any Taxes, will be distributed to all Authorized Claimants who cashed their Initial Distribution check and who would receive at least $5.00 from such distribution based on their *pro-rata* share of the remaining funds. *Id.* ¶ 41(f).

Six months after the completion of the Second Distribution, or if A.B. Data in consultation with Class Counsel determines a Second Distribution will not be cost-effective, the residual balance shall be contributed to an appropriate cy pres recipient, as to be identified by Defendants and approved by Lead Plaintiff and the Court. *Id.* ¶ 41(g).

## IV.    FEES AND EXPENSES OF THE SETTLEMENT ADMINISTRATOR

Pursuant to the Stipulation, and as explained to members of the Settlement Class in the Notice, the Settlement Fund is to be used to pay, among other things, the costs and expenses incurred in connection with the administration and distribution of the Settlement. *See* Notice at ¶ 31; § 2(b). A.B. Data agreed to be the Settlement Administrator and to conduct the notice program

10

and the claims administration process in exchange for payment of its fees and expenses. Brauns Distribution Decl. ¶ 42. As of January 23, 2026, A.B. Data has been paid $50,000 in Notice Costs and Administration Costs. *Id*. ¶ 43. Pursuant to § 29 of the Settlement Agreement, the remaining $130,000 in Notice Costs and Administration Costs authorized by the Final Approval Order will be paid to A.B. Data prior to the Initial Distribution. *Id*. ¶ 44. As of January 23, 2026, A.B. Data has accrued $230,310.60 in Notice Costs and Administration Costs, $50,310.60 in excess of the $180,000 authorized by the Final Approval Order, which includes but is not limited to: print and postage expenses for additional notification to Settlement Class Members, professional fees related to project management including non-standard declaration reporting, and the costs and fees associated with the continued administration and distribution of the net settlement fund. *Id*. In accordance with the Distribution Plan described above, Lead Plaintiff and Class Counsel respectfully request that A.B. Data, after the Initial Distribution and the payment of any amounts mistakenly omitted from the Initial Distribution, be paid any additional Notice Costs and Administration Costs in excess of the $180,000 approved by the Court in the Final Approval Order.

## V.     CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully submits that its Motion for Authorization to Distribute Net Settlement Fund to Authorized Claimants should be granted in its entirety and that the Proposed Order Approving Settlement Distribution to Authorized Claimants should be entered.

Dated: January 26, 2026

Respectfully Submitted,

**KIRBY McINERNEY LLP**

/s/ Sarah E. Flohr
Sarah E. Flohr (*pro hac vice*)
250 Park Avenue, Suite 820
New York, New York 10177
212.371.6600
sflohr@kmllp.com

Anthony F. Fata (*pro hac vice*)
Cormac H. Broeg (*pro hac vice*)
211 West Wacker Drive, Suite 550
Chicago, Illinois 60606
312.767.5180
afata@kmllp.com
cbroeg@kmllp.com

*Lead Counsel for Lead Plaintiff Dufoe*

**BERMAN TABACCO**
Patrick T. Egan (BBO #637477)
Justin N. Saif (BBO #660679)
1 Liberty Square
Boston, Massachusetts 02109
617.542.8300
pegan@bermantabacco.com
jsaif@bermantabacco.com

*Local Counsel for Lead Plaintiff Dufoe*

**HANNAFAN & HANNAFAN, LTD.**
Blake T. Hannafan (*pro hac vice*)
181 West Madison Street, Suite 4700
Chicago, Illinois 60602
312.527.0055
bth@hannafanlaw.com

*Additional Counsel for Lead Plaintiff Dufoe*

**G. DOWD LAW LLC**
George Dowd (*pro hac vice*)
181 West Madison Street, 47th Floor
Chicago, Illinois 60602
312.854.8300
george.dowd@gdowd.law

*Additional Counsel for Lead Plaintiff Dufoe*

13

## CERTIFICATE OF SERVICE

I, Sarah E. Flohr, hereby certify that on January 26, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF, served upon the *pro se* filers listed in the Certificate of Service for Lead Plaintiff's Response to Late Claimant David Kipe's *Pro Se* Motion for Equitable Tolling and Acceptance of Late Filed Claim (ECF No. 116) and Nyree Hinton, by mail and email, and will be uploaded to the Settlement website

Dated: January 26, 2026

*/s/ Sarah E. Flohr*
Sarah E. Flohr